In re Noor U. HASSAN, Shamim Hassan, Debtors.

Noor U. Hassan and Shamim Hassan, Appellants,

v.

The United States of America, Department of Treasury, Internal Revenue Service, Appellee.

No. 03–20919–CIV.

Bankruptcy No. 01–40064.

Adversary No. 02–1012.

United States District Court, S.D. Florida.

July 30, 2003.

Drew S. Sheridan, Miami, FL, for appellants.

Timothy Maher, Miami, FL, Deborah M. Morris, U.S. Department of Justice, Tax Division, Washington, DC, for appellee.

### *ORDER AFFIRMING MEMORANDUM OPINION AND FINAL JUDGMENT OF BANKRUPTCY COURT*

GOLD, District Judge.

**THIS CAUSE** is before the court upon the initial appeal of the appellants, Noor Hassan and Shamim Hassan ("the Hassans"). The Hassans appeal the Memorandum Opinion and Final Judgment of the United States Bankruptcy Court for the Southern District of Florida excepting from discharge appellants' federal income tax liabilities for the years 1995, 1996, and 1997, which were entered by Bankruptcy Judge Larry Lessen on January 16, 2003. The bankruptcy court found that pursuant to 11 U.S.C. § 523(1)(a)(C), the Hassans' tax liabilities would not be discharged because the Hassans willfully attempted to evade or defeat their tax obligations. The appellants are the debtors, Noor and Shamim Hassan. The United States Internal Revenue Service ("IRS") is the appellee. On July 22, 2003, oral argument was held in this case. After carefully considering the record, the parties' arguments, and the applicable law, the court affirms the bankruptcy court's judgment for the reasons that follow.

### Factual Background and Procedural History [1]

The Hassans initiated the adversary proceeding in bankruptcy court on January 7, 2002, to determine the dischargeability of federal income tax liabilities for years 1995, 1996, and 1997. The proceeding was tried before Judge Larry Lesson on November 20, 2002. On January 16, 2003, Judge Lessen entered judgment in favor of the United States. According to Judge Lessen, the debtors willfully attempted to evade or defeat a tax within the meaning of Section 523(a)(1)(C).

The appellants state that the issue on appeal is: "Whether the bankruptcy court erred in entering judgment in favor of appellee Internal Revenue Service against appellants, determining that the income tax obligations of appellants were excepted from discharge under 11 U.S.C. § 523(a)(1)(C) for the years 1995, 1996 and 1997, based upon findings of fact insufficient as a matter of law to sustain such holding, and based upon issues not presented in the pleadings and upon facts not presented in evidence."

The Hassans originally filed for bankruptcy relief under Chapter 13 on September 20, 2001, after receiving IRS levies. The case became a Chapter 7 proceeding on October 3, 2001. On February 13, 2002, a discharge was granted in bankruptcy court. The appellants owed a total of $569,575.94 in tax liabilities, but they have already paid $226, 220.65. These payments came after the Hassans were contacted by the IRS. The Hassans did not file their 1994 and 1995 tax returns, thus they were contacted in September 1997 by the IRS to do so. After filing those returns, the Hassans still failed to timely file their 1996 and 1997.

Noor Hassan, during the relevant tax years, was an emergency room physician, but his employer did not withhold any taxes from his salary. During that time, Dr. Hassan earned over 1.3 million dollars. Dr. Hassan worked in Pennsylvania and Ohio while his wife and four children resided in Florida. The circumstances surrounding the alleged tax evasion are described in more detail below.

### Standard of Review

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), as it involves the appeal from a final order of the bankruptcy court finding that the appellants' tax liabilities were excepted from discharge. The bankruptcy court's findings of fact will not be set aside unless they are found to be clearly erroneous. *See Sipes v. Atlantic Gulf Commun. Corp. (In re General Devp. Corp.)*, 84 F.3d 1364, 1367 (11th Cir.1996); Fed. R. Bankr.P. 8013. Its conclusions of law are subject to *de novo* review. *See id.* at 1367.

### Analysis

#### I. The Bankruptcy Court's Opinion

According to the bankruptcy court's memorandum opinion, the Hassans filed their 1995 tax returns late and only after being contacted by the IRS. The 1996 and 1997 tax returns were also filed late. The 1995 tax year return was due on October 15, 1996, but the return was not filed until December 4, 1997, which was more than one year after the due date. The 1996 return was due on October 15, 1997, but the Hassans filed it on March 17, 1998. Finally, the 1997 return was due on April 15, 1998, but was filed on June 12, 1998. After the IRS issued several levies, a payment plan was created. The debtors made

---

1. The background provided below is derived from the bankruptcy court's memorandum opinion of January 16, 2003.

payments to that plan, but defaulted at least once. The payments continued until July 2001 (shortly before the filing of the Chapter 13 bankruptcy proceeding), but a substantial amount remains unpaid.

In arriving at the conclusion that the Hassans willfully evaded their taxes, the bankruptcy court noted that they engaged in both omissions and affirmative acts. The relevant omission was failure to timely file their tax returns, including the fact that the Hassans only filed their returns after being contacted by the IRS. The court also found that the debtors failed to make tax payments. The court recognized that nonpayment alone is not sufficient to establish section 523 exception, but asserted that it was still relevant in its analysis.

The bankruptcy court explained that despite their tax liabilities, the Hassans have not accrued significant assets to explain what happened to the large amount of funds earned during the relevant tax years. The court went on to note that the Hassans have written numerous checks, made numerous ATM withdrawals and have otherwise spent thousands of dollars on property, cars, and travel. The debtors allegedly claim that much of the money paid to individuals, including their daughter, was for loans, but provided no evidence to support such contention. Accordingly, taking all the evidence together, the bankruptcy court found that there had been badges of fraud.

As for the $226,2220.65 paid toward the tax liability by the Hassans, the bankruptcy court stated that subsequent payment does not negate prior willfulness. The court wrote that these payments were made only after the IRS had initiated collection actions. In addition, the Hassans earned income of over $2.8 million between 1995 and 2001, but still failed to pay their entire tax liability. The payments made were made pursuant to an installment agreement, which required monthly payments of $9,200. Pending levies were released after this agreement was made, but the Hassans defaulted on the agreement in January 2000. The Hassans made additional payments of $5000 per month, but stopped those payments in July 2001.

## II. Legal Standards for Exception from Discharge

██ 11 U.S.C. § 523(a)(1)(C) states: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt .. for a tax or a customs duty .. with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The creditor, here the IRS, bears the burden of establishing by a preponderance of the evidence that the debt is nondischargeable under this chapter. *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000). In order to prove section 523 exception, the IRS must meet two requirements: conduct and mental state. *Id.*

██ The conduct requirement entails a showing that the debtor sought in any manner to evade or defeat his tax liability. The conduct described above must be willful to satisfy the mental state requirement. *Id.* The Eleventh Circuit has adopted a three-prong test to determine whether failure to pay taxes was willful. The IRS must establish that (1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty. *Id.* The only prong that is at issue in this case is prong three: whether the Hassans voluntarily and intentionally violated their duty.

██ As noted above, the bankruptcy court's determination of willfulness is a question of fact that is reviewed under a

clearly erroneous standard. *See In re Spiwak*, 285 B.R. 744, 748 (S.D.Fla.2002) (citations omitted). The court cannot make independent factual findings without such a showing. *Id.* (citing *In re Sublett*, 895 F.2d 1381, 1383–84 (11th Cir.1990)).

### III. Issues on Appeal

The issue this court must decide on appeal, as stated by the appellants, is whether the bankruptcy court properly concluded that the appellants' tax liabilities for the years 1995–1997, were excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). The Hassans admit that their tax returns were filed late and that they did not pay their tax debt in full. They argue, however, that the IRS did not prove that they willfully evaded making such payments.

The IRS presents several arguments in opposition to those asserted by the Hassans. First, appellee states that the bankruptcy court did not err in making its factual findings to support the conclusion that appellants willfully attempted to evade or defeat a tax. The IRS argues that the Hassans' extensive dealing in cash, evidenced by the numerous checks entered into evidence by the government as well as evidence of ATM withdrawals, indicate evasion. The IRS asserts that the Hassans possibly chose to deal mainly in cash to avoid accruing assets that could have been attached pursuant to a levy.

The IRS argues that the Hassans' failure to pay their taxes was a conscious choice because they knew they had to file and pay their taxes, had made enough money to do so, but instead decided to intentionally and voluntarily violate their duty. The fact that the Hassans made

some payments toward their liability does not negate willfulness, claims the IRS, because those payments came only after the IRS contacted them and only after the IRS had served notices of levies seizing portions of Dr. Hassan's wages. The IRS therefore asserts that the Hassans meet the mental state requirement.

The appellee further argues that an exception to discharge is warranted because the Hassans engaged in conduct supporting the bankruptcy court's finding of willful attempt to evade or defeat a tax. According to the IRS, appellants' conduct of omitting to file and pay their taxes on time as well as the affirmative acts of making purchases in their daughter's name, dealing extensively in cash, and paying off so-called loans to family members, including to their daughter, for which they have no documentation, support a finding of willfulness. The appellants also asked for time extensions to file their taxes, notes appellee, but still failed to pay. In addition, the IRS argues that the Hassans' frequent trips abroad in which they carried large amounts of cash further indicate their ability to pay, but their willful decision not to do so.

In their reply memorandum, the Hassans argue that the IRS should have raised section 523(a)(1)(C) in their *prima facie* complaint or answer in order to give notice of the issue that they would be proving at trial. Because appellants allegedly did not raise willful evasion of taxes in the *prima facie* case, appellants assert that the bankruptcy court should have ruled in their favor. The Hassans claim that they did not know about the IRS's defense until the pre-trial order, which was after the close of all discovery.[2]

2. As explained by the IRS, section 523(a)(1)(C) is not an affirmative defense, and the pretrial order in the adversary proceeding

clearly indicated the involvement of section 523(a)(1)(C), providing appellants with sufficient notice. In the pretrial order, which was

Second, in their brief, appellants state that it is not disputed that they did not accrue significant assets. In fact, appellants admit that they spent their income on "personal living expenses, travel, weddings, college expenses, dining and the like." The Hassans claim that it is unreasonable to expect them to explain where every cash advance went or document personal loans to family members. They contend that this inability to provide records should not support the claim of willfulness.

Because the IRS had not frustrated their collection efforts and because the Hassans had income that could have been levied, appellants claim that tax evasion has not been proven. Appellants argue that the fact that they filed their tax returns late should not be used against them because it is "somewhat understandable that a 62 year old physician who works grueling hours, residing in out of state hospitals almost 24 hours a day 7 days a week, (and who has little financial acumen), may be dilatory in meeting his tax obligations." The Hassans therefore state that willfulness has not been proven and the bankruptcy court's final judgment should be reversed.

## IV. Applicable Law and the Findings of Facts

The district court in *Spiwak* noted that certain types of conduct can constitute circumstantial evidence of willful intent to evade taxes, including "(1) the recurrence of the understatement of income for more than one tax year, (2) the understatement of income, (3) implausible or inconsistent explanations of behavior, (4) inadequate records, (5) transfer of as-

sets to a family member, (6) transfer for inadequate consideration, (7) transfer that greatly reduced assets subject to IRS execution, and (8) transfers made in the face of serious financial difficulties." *Spiwak*, 285 B.R. at 751 (citation omitted); *see also In re Sternberg*, 229 B.R. 238, 246 (S.D.Fla.1998). The Hassans claim that the IRS's best evidence is the fact that Dr. Hassan received loans from his daughter for which he has no records, and that this claim alone is insufficient to show fraud and willfulness to evade taxes. A review of the IRS's arguments as well as the record does not support the Hassans' contention. Several of the noted factors in *Spiwak* are present in this case.

First, the Hassans have submitted "implausible or inconsistent" explanations of behavior, such as the reasons for dealing largely in cash, including Dr. Hassan's almost immediate withdrawal of his salary income from his bank accounts after payment. (*See* Gov. Exh. H). Second, there have also been transfers to family members that do not have adequate explanation. There has, for example, been repayment of substantial loans to a daughter without an explanation or documentation of consideration. (*See* Gov. Exh. L—S). There are inadequate records of many of the business dealings that the Hassans made during the relevant years. The Hassans, as the IRS argues, also failed to acquire significant assets though Dr. Hassan made a great deal of money and the family was not hesitant about spending it on traveling, dining, land bought in a daughter's name, and other expenses. (*See* Gov. Exh. I.). Thus, at least five of

stipulated and agreed to by all parties, including the Hassans, it states that the issue of law to be litigated is whether exception to discharge is warranted pursuant to section 523(a)(1)(C). As noted by the IRS, and not disputed by the Hassans, a pretrial order su-

persedes prior pleadings. (citing Fed.R.Civ.P. 16(a)); *Drill South Inc. v. International Fidelity Ins. Co.*, 234 F.3d 1232, 1239–40 (11th Cir.2000). Accordingly, appellants' argument regarding notice is without merit.

the eight noted factors above exist in this case to support the bankruptcy court's finding of willfulness.

One of several badges of fraud is failure to cooperate with the IRS. *See In re Fleck,* 242 B.R. 188, 191 (M.D.Fla.1999). In this case, the Hassans' failure to cooperate is illustrated by their failure to file timely tax returns even after being given extensions by the IRS. In addition, the Hassans were placed on a payment schedule and still failed to stay on track and fully pay off their tax liabilities, accruing penalties in the process. (*See* Hassan Exh. 6–8). The Hassans claim that Dr. Hassan's age and busy job explain why he might have failed to file his taxes. This argument is without merit. Certainly if Dr. Hassan were able to function as an emergency room physician and earn over $300,000 per year, he could have hired an accountant to file his taxes on time. Dr. Hassan was also able to plan expensive trips to India at least once a year, including setting up bank accounts in that country. If Dr. Hassan's age and busy lifestyle did not prevent him from enjoying personal trips and ventures with his family, they surely should not have prevented him from filing his taxes as he was obligated to do.

*Fleck* notes that dealings in cash is also a badge of fraud. *See id.* at 190. Here, the Hassans had extensive dealings in cash. As this court has previously noted, "a single badge of fraud may amount to only a suspicious circumstance, [but] a combination of them will justify a finding of fraud." *Sternberg,* 229 B.R. at 246 (citing *United States v. Fernon,* 640 F.2d 609 (5th Cir. 1981)). Dr. Hassan's dealings were so extensive that the record shows that he would sometime withdraw his entire paycheck after it was direct-deposited into his bank account. (*See* Gov. Exh. H). The court carefully reviewed the transcript of Dr. Hassan's testimony at trial and was unable to find an adequate explanation for such dealings in cash.

As the bankruptcy court discussed in its memorandum opinion, as well as the parties in their pleadings, there are three main cases from the Eleventh Circuit that deal directly with section 523(a)(1)(C). First, the Eleventh Circuit in *In re Haas,* 48 F.3d 1153 (11th Cir.1995), *rev'd. In re Haas,* 162 F.3d 1087 (11th Cir.1998) on unrelated issue. In *Haas,* the Eleventh Circuit addressed whether a debtor's failure to pay tax liabilities, without more, could constitute willful attempt to evade or defeat a tax. *Id.* at 1155. The Court held that "a debtor's failure to pay his taxes, alone, does not fall within the. scope of section 523(a)(1)(C)'s exception to discharge in bankruptcy." *Id.* at 1158. In this case, the Hassans assert that the IRS has only shown that they failed to pay all their taxes and nothing more. The record proves otherwise and appellee notes that several badges of fraud, deduced from the findings of fact, support the bankruptcy court's ruling regarding willful evasion. These badges of fraud, discussed above, distinguish this case from *Haas,* in which there was no connection between mental state and conduct, as required by the Eleventh Circuit.

The Eleventh Circuit, in *In re Griffith,* 206 F.3d 1389 (11th Cir.2000), further clarified *Haas* and the applicable standard in a section 523 analysis. In *Griffith,* the debtor had transferred assets to his wife for no apparent consideration. *Id.* at 1396. The district court had found that Griffith had fraudulently transferred assets in order to prevent tax collection. *Id.* at 1392. *Griffith* was distinguished from *Haas,* therefore, because the debtor in *Griffith* had taken affirmative steps to avoid his tax obligations. The Eleventh Circuit held "that § 523(a)(1)(C) does render nondischargeable tax debts where the debtor en-

gaged in affirmative acts constituting a wilful attempt to evade or defeat payment of taxes." *Id.* at 1395–96. In this case, as in *Griffith,* the Hassans engaged in intra-family transfers of property and funds for little or no consideration. The record reflects, as confirmed by Dr. Hassan's testimony, that Dr. Hassan gave his daughter several loans or made payments on property that were in his daughter's name. Dr. Hassan claims that his daughter would pay his bills and he was merely paying her back, but he has provided no documentation to support that claim, including records of the daughter's alleged payments to his credit card.

The IRS has also shown that prong three of the three-prong test described earlier is met: the Hassans voluntarily and intentionally violated their duty to pay taxes. In *Griffith,* the Eleventh Circuit looked to Griffith's badge of fraud of transferring assets to his wife to support its affirmance of the district court's ruling. Griffith, like Dr. Hassan, lacked forthrightness and was evasive, thus the Court concluded that the "findings [were] sufficient to justify a finding of fraud and, thus, to support the finding that Griffith's conduct was willful." *Id.* (citing *In re Sternberg,* 229 B.R. 238, 246 (S.D.Fla.1998)). In this case, there is more than a suspicious circumstance. As outlined in detail above, several badges of fraud exist in this case to justify the bankruptcy court's findings. A review of Dr. Hassan's testimony at trial also indicates lack of forthrightness.

Finally, in *In re Fretz,* 244 F.3d 1323, 1325 (11th Cir.2001), the Court addressed a case in which an alcoholic, also a doctor, had failed to file his taxes during a "severe downward spiral in his life." Dr. Fretz, unlike Dr. Hassan, did not attempt to move any assets around or appear to conceal any of his assets or funds. *Id.* The

district court had found that because Dr. Fretz had not engaged in any affirmative acts to avoid his taxes, willful evasion was not proven, but the Eleventh Circuit reversed, holding that the act of omission—failing to file tax returns—was sufficient to meet the conduct requirement. *See id.* at 1331. The Court noted that the "conduct requirement is satisfied ... where a debtor engaged in affirmative acts to avoid payment or collection of taxes as the debtor in *Griffith* did." *Id.* at 1329 (citation omitted). Here, The Hassans engaged in affirmative acts as indicated by the bankruptcy court. The Hassans failed to file timely tax returns, even after being given extensions by the IRS. Indeed, the Hassans only filed such returns for tax years 1995, 1996, and 1997, after being contacted by the IRS. They also failed to fully pay their tax liabilities. Their lifestyle during the relevant period was one in which they flourished financially, paying for property, weddings, vacations, dinners, colleges, and other personal expenses. The Hassans were fully aware of their obligation as well as capable of meeting it, as Dr. Hassan confirmed during his testimony, but chose to ignore such obligation until contacted by the IRS. Dr. Hassan cannot distinguish himself, as he attempts to do, from Dr. Fretz simply because Dr. Fretz failed to file returns altogether, because Dr. Hassan only filed his returns after sufficient prodding by the IRS. *Fretz* also noted that the issue of the late-filed returns go to conduct, rather than mental state. *Id.* at 1331.

*Fretz* explained further that acts of omission, and not just affirmative acts as discussed in *Griffith,* could satisfy the conduct requirement. *Id.* at 1329. Citing the Third and Sixth Circuits,[3] the *Fretz* court noted that omitting to file tax returns cou-

---

**3.** *In re Fegeley,* 118 F.3d 979 (3d Cir.1997); *In re Toti,* 24 F.3d 806 (6th Cir.1994).

pled with failure to pay taxes can satisfy the conduct requirement of section 523(a)(1)(C). *Id.* at 1330 ("An interpretation of § 523(a)(1)(C) which covered only acts of commission and not culpable acts of omission would limit the means by which a taxpayer may be found to have willfully attempted to evade or defeat taxes, and it would tend to make the modifying phrase 'in any manner' superfluous. For all these reasons, we hold § 523(1)(1)(C) covers both acts of commission and acts of omission."). In this case, the court faces both affirmative acts as well as acts of omission. Dr. Hassan did not file his returns until he was compelled to so do by the IRS. And even after he filed those returns, he failed to pay his taxes. In addition, the Hassans took affirmative steps that indicate badges of fraud, including intra-family transfers and dealings in cash.

*Fretz* clarified that fraudulent intent is not required to prove the mental state requirement. *Id.* at 1330 (citation omitted). As long as the government meets the three prong test and proves that the violation was voluntary and intentional (and not, for example, an inadvertent mistake), the mental state requirement is met. *See id.* Here, the mental state requirement is clearly met because the Hassans have put forth no explanation for their failure to file timely tax returns and pay their taxes. They have not alleged that mental incapacity or financial constraints prevented them from upholding their duty. They knew about their duty, earned enough money to meet it, but voluntarily chose to spend their income in other ways.

Another case discussed by the parties as well as the bankruptcy court sheds additional light on the bankruptcy's court's findings. In *In re Meyers*, 196 F.3d 622, 624 (6th Cir.1999), the debtor, who had not filed any tax returns during a particular period and had also claimed incorrect ex-

emptions on his W–4's, attempted to negate willfulness by arguing that he later voluntarily cooperated with the IRS to rectify his past mistakes. The Sixth Circuit noted that it was "unpersuaded by [the debtor's] claim that the wilfulness of his earlier evasion of taxes was somehow nullified by later coming clean with the IRS." *Id.* at 625. In this case, the court agrees with the bankruptcy court's conclusion that the Hassans' willingness to file proper tax returns after being contacted by the IRS and even agreeing to enter into a payment plan and make some payments do not nullify prior willfulness. Even though the Hassans eventually filed their taxes and made substantial payments, the fact remains that they did not file their tax returns when they were supposed to (and have provided no justification for that failure) and their subsequent cooperation with the IRS was flawed because they eventually defaulted on their payments and stopped making payments altogether. (*See* Hassan Exh. 10). Consequently, *Meyers* supports the finding that the Hassans' debt should not be discharged. The Hassans indicate that because they eventually filed accurate tax returns, the fact that they filed them late should not be considered in the willfulness analysis. This argument too is flawed. As the district court for the Middle District of Florida stated in *In re Binkley*, 242 B.R. 728, 733 (M.D.Fla.1999), the filing of tax returns late is evidence, with other acts, of fraud. It is also important to look at the totality of circumstances and not just one factor in determining dischargeability. *Id.* (citing *Korecky v. Commissioner*, 781 F.2d 1566, 1568 (11th Cir.1986)). Here, not only did the Hassans file their taxes late after being given several extension, they also failed to keep up with an arranged payment plan. These occurrences along with the other badges of fraud present in this

case, compel affirmance of the bankruptcy court's judgment.

The Hassans claim that they are only guilty of "procrastination and mismanagement." A review of the record reflects more transgressions. For example, appellee notes that in 1995 appellants' daughter purchased land in Broward County in her name, but payments to the seller of that land came from Dr. Hassan, which continued through 1997, totaling over $25,000. Additionally, payments to the daughter from Dr. Hassan, allegedly for the repayment of loans and other expenses, total over $48,000 over the relevant years. (*See* Gov. Exh. L—S). Thus, the claim that only procrastination and mismanagement exist in this case is unsupported by the record ripe with badges of fraud.

Finally, the court notes that before the bankruptcy proceedings that are the subject of this appeal took place, the Hassans previously filed for bankruptcy. In 1994, the Hassans filed for bankruptcy in a Chapter 7 proceeding and received discharge for tax liabilities in that case. The bankruptcy court considered this prior case in its analysis in arriving at the conclusion that it was relevant in showing that the Hassan's were aware of their tax obligations. The prior bankruptcy proceeding also indicates, as the IRS argues, a pattern of nonpayment of taxes. The Hassans claim that the bankruptcy court should never have considered the prior bankruptcy case, but the bankruptcy court correctly noted that prior conduct can help show willfulness or state of mind.

The Hassans filed the current bankruptcy case in response to IRS levies. (*See* Hassan Exh. 10). They write in their reply memorandum that they "would have continued paying their tax liability but for the IRS' uncompromising imposition of substantial penalties and interest, and demanding a minimum monthly payment due of $9,2000.00 on top of their current tax obligations." This statement fails to justify the Hassans' argument for discharge. The reason penalties and interest were imposed is because of the Hassans' initial failure to pay their taxes timely. The fact that the IRS issues penalties for default and late payments cannot be a reason to discharge tax obligations.

### Conclusion

As the Eleventh Circuit noted in *Fretz,* the "fresh start" policy awarded under a Chapter 7 bankruptcy proceeding is only available to the "honest but unfortunate debtor." *Fretz,* 244 F.3d at 1326 (citing *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)) (citation omitted). The Hassans have not proven themselves to be honest but unfortunate debtors. They left significant tax liabilities unpaid while they enjoyed the fruits of their labor, vacationing, dining, and tending to other family affairs. They had no adequate explanation or justification for their failure to pay their taxes. In addition, they conducted their lives in a manner that prevented the attachment of assets by the IRS, even though they had significant income and otherwise enjoyed such income in their daily lives. The bankruptcy's court's findings of facts have not been shown to be clearly erroneous. Likewise, the court's independent review of the record, the applicable case law, as well as the parties arguments support the conclusion that the Hassans' federal income tax liabilities for years 1995, 1996, and 1997 should be excepted from discharge pursuant to Section 523(a)(1)(C).

Accordingly, it is hereby:

**ORDERED AND ADJUDGED THAT:**

1. The Bankruptcy Court's Memorandum Opinion and Final Judgment excepting from discharge appellants'

tax liabilities for years 1995, 1996, and 1997 is AFFIRMED.

2. The Clerk of the Court shall CLOSE this case.

3. All pending motions are DENIED AS MOOT.