In re Arthur I. JACOBS, Debtor.

Arthur I. Jacobs, Plaintiff,

v.

United States of America, Defendant.

Bankruptcy No. 03–07148–BKC–3P7.

Adversary No. 4–45.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 24, 2005.

Ronald Bergwerk, Jacksonville, FL, for Debtor.

Raymond R. Magley, Smith Husley and Busey, Jacksonville, FL, for Trustee.

Robert Altman, Palatka, FL, pro se.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(1)(C). The Debtor, Arthur I. Jacobs, is the Plaintiff and the United States of America is the Defendant. The issue is whether the Plaintiff's federal tax liability for the years 1990 through 1995, 1997 and 1998 is excepted from discharge under 11 U.S.C. § 523(a)(1)(C). After a hearing held on August 26, 2004,

the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Arthur I. Jacobs (the "Plaintiff") is a real estate and transactional lawyer. He has practiced primarily in the Fernandina Beach area since 1972. (Tr. At 19.)

2. The Plaintiff formerly operated Arthur I. Jacobs, P.A., a law firm that filed bankruptcy in 1995 largely because of liabilities for federal taxes. The Plaintiff's successor law firm, Jacobs & Associates, P.A., is also indebted to the United States for federal taxes in the amount of $56,000. (Tr. at 30–32.)

3. The principal amount of the Plaintiff's individual income tax liability for tax years 1990 through 1995, 1997 and 1998 was self-assessed, meaning that the Plaintiff voluntarily reported his taxes as due on his income tax returns. Additionally, the Plaintiff filed a tax return for each of the years at issue and did not file any fraudulent returns. (Tr. at 8–9.)

4. During the years 1990 through 1998, the Plaintiff paid approximately $200,000 of his federal income tax liability. However, the Plaintiff has failed to pay the entire debt and has incurred tax penalties and interest charges in each of the taxable years at issue. (Tr. at 8–9.)

5. The Plaintiff sought an automatic extension of time to file, as well as a second extension of time until October, for each of the tax years at issue. The application for automatic extension requires the payment of the tax liability that the taxpayer reasonably estimates is due to the United States Treasury. The Plaintiff, however, failed to sufficiently pay this amount. (Tr. at 42.)

6. In 1990, the Plaintiff's wife, Mrs. Jacobs, worked for the Plaintiff's law firm. (Tr. at 48.)

7. From 1997 until March 2001, Mrs. Jacobs owned a small retail jewelry store in Fernandina Beach called Morton–Jacobs Jewelers, Inc. (Tr. at 50.)

8. The Plaintiff and Mrs. Jacobs filed joint tax returns for 1998, 1999, 2000 and 2001. Mrs. Jacobs did not report any earned income during these years, except for a dividend from Morton–Jacobs Jewelers, Inc. of $22,321, which was reported on the joint 2001 return filed by the Jacobses. (Def.'s Exs. 8–12.)

9. From January 5, 1998 through July 3, 2000, the Plaintiff wrote checks payable to Morton–Jacobs Jewelers totaling over $47,000. Additionally, the Plaintiff lent approximately $119,000 to Morton–Jacobs Jewelers. Mrs. Jacobs sold all of the assets, inventory, and good will of the business for $80,000 in March 2001. However, the loan amounts have not been repaid to the Plaintiff. (Tr. at 50–51, 58.)

10. The Plaintiff and his wife reside in Amelia Island Plantation, a golfing resort community where they have lived since December 1995. The resort has amenities such as tennis courts, a spa, boutique-style shops, and a grocery store. (Tr. at 62–63.)

11. The Plaintiff and his wife purchased their home for approximately $525,000. The Plaintiff obtained a second mortgage on the property in order to help pay a portion of his tax liability. (Tr. at 66.)

12. The Plaintiff has made all the payments on both mortgages. The monthly mortgage payments, together with taxes and insurance, total approximately $4,500 per month. The house has a current fair market value of approximately $800,000; however, the Plaintiff does not have any equity in the house. (Tr. at 68–69.)

13. In October 1997, the Plaintiff was indicted by a federal grand jury with re-

spect to a $65 million dollar bond issue in 1986. The indictment was dismissed in August 1998. The Plaintiff sold various assets in order to pay the legal fees. (Tr. at 20.)

14. The Plaintiff and his wife dine and entertain at the Amelia Island Club on a regular basis. From March 1999 to June 2003, the Jacobses spent a total of $71,578.88 at the Club. The payments for the use of the Club total approximately $1,491 per month. (Tr. at 81–82.)

15. In 2000, the Plaintiff paid for elective cosmetic surgery for his wife, which cost nearly $20,000. (Tr. at 84–85.)

16. The Plaintiff has also donated to charities, including the Preservation Institute of Nantucket (a University of Florida foundation), Place of Encouragement ($12,-152.81 in 2000 and 2001), and the Amelia Island Chapel ($500 and $1,000 per month). (Tr. at 87.)

17. The Plaintiff's children are adults ages 35 to 28. The Plaintiff cares for his niece, age 17, and his stepson, age 24. (Tr. at 89–90.)

18. Over the past several years, the Plaintiff has made transfers to family members. In May 2003, the Plaintiff made a cash gift of $3,000 to his adult daughter Allison, a practicing attorney in Boston, to help her pay student loans. (Tr. at 90.)

19. The Plaintiff gave his adult son, Craig, a $5,000 check to purchase a truck. In addition, the Plaintiff made payments to Craig of $450 per month for two years in order to help with the purchase of the truck. (Tr. at 91.)

20. The Plaintiff also gave $6,200 to his son, Jason, for college expenses. (Tr. at 91–92.)

21. The Plaintiff made a $3,000 gift to his adult daughter, Jennifer, to help her purchase a home. (Tr. at 92.)

22. The Plaintiff also wrote a $1,000 check to his adult son, Jake Abernathy, upon his graduation from medical school in Alabama. (Tr. at 93.)

### CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 727, a debtor in a Chapter 7 bankruptcy case is generally granted a discharge from all debts that arise before the filing of the bankruptcy petition. 11 U.S.C. § 523(a) lists several debts that are excepted from discharge. In the present case, the issue before the Court is whether, under § 523(a)(1)(C), the Plaintiff willfully attempted to evade paying his tax liabilities such that the debt should be excepted from discharge.

Before examining the specific language of § 523(a)(1)(C), it is necessary to examine the relevant Bankruptcy Code provisions that Congress constructed dealing with the dischargeability of taxes. The assessment and collection of taxes has long been the object of special protection in bankruptcy cases. The rationale for preferential treatment is that the taxing authority, whether state or federal, is an involuntary creditor of the debtor. In § 523(a)(1)(A), Congress created a three-year lookback period, which excepts from discharge all income taxes for the three tax years preceding the date of the petition. In addition, under § 507(a)(8)(A)(i), the three-year lookback period provides priority of payment. Taken together (both non-dischargeability and priority), Congress fairly balanced the competing interests of (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years, (2) the debtor, whose fresh start should likewise not be burdened with such accumulation,

and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect.

■■■ Although debtors may obtain a discharge of tax liabilities that arose before the three-year lookback period, such taxes are not automatically discharged. Debtors are not entitled to obtain a discharge of tax liabilities if they fail to file a return, *see* § 523(a)(1)(B)(i), or if they file a fraudulent return or otherwise willfully attempt in any manner to evade or defeat such tax. *See* § 523(a)(1)(C). The obvious purpose of these exceptions is to prevent the use of the Bankruptcy Code as part of a dishonest scheme to avoid tax liability. No time limit is imposed with respect to these exceptions to discharge.

In the present case, the liability at issue does not fall within the three-year lookback period; additionally, it is undisputed that the Plaintiff filed a return for each of the tax years at issue and that the Plaintiff did not file any fraudulent returns. Therefore, the only relevant Code provision at issue is § 523(a)(1)(C), specifically whether "the debtor willfully attempted in any manner to evade or defeat such tax."

■■■ Three cases frame the Eleventh Circuit's interpretation of this statutory exception: *In re Fretz*, 244 F.3d 1323 (11th Cir.2001); *In re Griffith*, 206 F.3d 1389 (11th Cir.2000); and *In re Haas*, 48 F.3d 1153 (11th Cir.1995), *abrogated in part by In re Griffith*. Under § 523(a)(1)(C), the burden is on the Internal Revenue Service to prove by a preponderance of the evidence that the debtor willfully evaded or tried to defeat such tax. *See In re Fretz*, 244 F.3d at 1327. The statute contains both a mental state requirement as well as a conduct requirement. *Id.*

■■■ The mental state required under § 523(a)(1)(C) is willfulness. *Fretz*, at 1327–30. A debtor's attempt to avoid his tax liability is considered willful if it is done voluntarily, consciously or knowingly, and intentionally. *Id.* In order to satisfy the mental state requirement, the government must establish that the debtor (1) had a duty to file income tax returns and pay taxes, (2) that the debtor knew he had such duty, and (3) that the debtor voluntarily and intentionally violated such duty. *Id.* The third prong of the mental state requirement does not apply to debtors who make inadvertent mistakes, but rather preserves the application of the dischargeability exception to those debtors whose efforts are both knowing and deliberate. *Id.* at 1331; *In re Birkenstock*, 87 F.3d 947 (7th Cir.1996).

In applying the test of whether the Plaintiff "willfully" attempted to evade paying his taxes, it is undisputed that the Plaintiff had a duty under the law to pay his taxes. Additionally, it is undisputed that the Plaintiff knew that he had a duty to pay such taxes. However, the issue of whether the Plaintiff voluntarily and intentionally violated that duty is not as clear.

In *In re Haas*, the Eleventh Circuit was faced with the issue of whether § 523(a)(1)(C) renders taxes non-dischargeable where the debtor merely failed to pay his taxes. 48 F.3d 1153 (11th Cir. 1995). The court stated that a finding of non-dischargeability under § 523(a)(1)(C) for mere non-payment would extinguish the general rule of the presumption of dischargeability for tax debts that fall outside the three-year lookback period. *Haas*, 48 F.3d at 1157. Therefore, the court held that mere non-payment of taxes is insufficient to establish willfulness under the exception found in § 523(a)(1)(C). *Id.*

In *Griffith*, on the issue of whether the debtor voluntarily and intentionally violated the duty to pay his taxes, the court noted that both the debtor and his wife were "evasive and lacked that ring of

forthrightness reflective of an open and credible witness." 206 F.3d 1389, 1396 (11th Cir.2000). The Plaintiff, contrary to the debtor in *Griffith,* has portrayed a remorseful debtor with a white heart. Further, and more importantly, it is difficult for the Court to find that the Plaintiff *willfully* attempted to evade paying his taxes considering the fact that he filed accurate returns each year, voluntarily assessed himself with such tax debt, and paid, during the years 1990 through 1998, approximately $200,000 in income taxes to the government.

In addition to proving the mental state requirement, the burden is on the government to establish the conduct element. In order to satisfy the conduct requirement under § 523(a)(1)(C), the government must proffer evidence of actual evasion. *See Griffith,* 206 F.3d at 1393. In determining whether there is evidence of actual evasion, a Court analyzes whether a debtor has engaged in affirmative acts constituting a willful attempt to evade or defeat payment of taxes. *Id.* at 1394. Further, the exception of § 523(a)(1)(C) applies to evasion of the assessment of taxes as well as the payment of taxes. *See Fretz,* 244 F.3d at 1328 (stating that the debtor willfully attempted to evade or defeat the payment of tax, even though the debtor did not attempt to defeat the assessment of the tax). Some courts rely on the "badges of fraud" to provide an indicia of a debtor's willful evasion. This conduct includes: (i) the understatement of income for more than one tax year; (ii) implausible or inconsistent behavior; (iii) the debtor's failure to cooperate with the government; (iv) inadequate record keeping; (v) transfers of assets for inadequate consideration; (vi) transfers that greatly reduce assets; and (vii) any other conduct that is likely to mislead or conceal. *See In re Griffith,* 206 F.3d at 1389 (11th Cir.2000);

*In re Hassan,* 301 B.R. 614, 622 (S.D.Fla. 2003). However, none of these factors is dispositive since a court must consider the totality of the circumstances in each individual case. *Hassan,* 301 B.R. at 623.

In *Landi v. United States (In re Landi)* 316 B.R. 363 (Bankr.M.D. Fla.2004), the debtors used their professional corporation to shield money from the Internal Revenue Service in order to pay all of their personal expenses. Additionally, the debtors fraudulently claimed withholding credits against their income, knowing their professional corporation was not paying the corresponding Form 941 taxes. *Id.* at 369. Further, the debtors failed to pay estimated taxes or to pay any income taxes with their tax returns, notwithstanding their ability to maintain a lavish lifestyle. *Id.* at 370. The court stated that it is proper to infer that the debtors embarked on an elaborate, willful scheme not to live up to the obligations of paying their taxes. *Id.* at 368.

In *In re Griffith,* 206 F.3d 1389 (11th Cir.2000), the debtor engaged in transfers to family members for little to no consideration. Specifically, the debtor transferred all of the shares in his corporation as well as $390,000 of promissory notes to his wife and himself as tenancy by the entireties in an attempt to safeguard the money. *Griffith,* 206 F.3d at 1391. The Eleventh Circuit, focusing on language in § 523(a)(1)(C) of whether the debtor "willfully attempted to evade 'in any manner,' " found that the debtor had engaged in a fraudulent transfer of assets in order to prevent the collection of his tax debt. *Id.* at 1392. Consequently, the court found that such conduct was sufficient to amount to a willful attempt to evade under § 523(a)(1)(C). *Id.* at 1397.

In the present case, the Plaintiff enjoys the benefits of a reasonably affluent lifestyle. The Plaintiff also made

conscious decisions to make several gifts of cash to various family members. Additionally, the Plaintiff engaged in various charitable contributions over the past years. However, the Court finds that such conduct does not rise to the level of willful evasion. The Court recognizes a debtor's financial ability to pay taxes in the years in which the taxes were due as a significant factor in evaluating whether the debtor willfully evaded paying taxes. However, the ability to pay one's taxes and electing not to do so, by itself, does not constitute evasion. Further, unlike the court in *Landi*, this Court does not find that the Plaintiff engaged in a fraudulent scheme in order to avoid or evade paying his taxes.

The government argues that the Plaintiff's conduct is analogous to the debtor's conduct in *Griffith*, evidencing grounds for non-dischargeability. Unlike *Griffith*, in the instant case, the government failed to proffer any evidence of fraud or evidence that the Plaintiff concealed or transferred assets while still maintaining control over the property. Therefore, notwithstanding the cumulative effect of the aforementioned conduct, the Court finds that the government failed to meet the preponderance of the evidence with respect to establishing that the Plaintiff engaged in affirmative acts sufficient to satisfy the conduct requirement under § 523(a)(1)(C).

### CONCLUSION

For the reasons set forth above, the Court finds in favor of the Plaintiff. The Plaintiff's federal tax liability for the years 1990 through 1995, 1997 and 1998 is not excepted from discharge under 11 U.S.C. § 523(a)(1)(C). A separate Judgment will be entered consistent with these Findings of Fact and Conclusions of Law.

### JUDGMENT

This adversary proceeding is before the Court upon the Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(1)(C). Upon Findings of Fact and Conclusions of Law separately entered, it is

Ordered:

1. Judgment is entered in favor of the Plaintiff.

2. The Plaintiff's tax liabilities for the years 1990 through 1995 and 1997 and 1998 are declared to be within the scope of the Plaintiff's discharge.