**In re Stanley M. SPIWAK, a/k/a Stanley M. Spiwak, Trustee, Debtor.**

**United States of America, Appellant/Defendant,**

v.

**Stanley M. Spiwak, a/k/a Stanley M. Spiwak, Trustee, Appellee/Plaintiff.**

**No. 97–7101–CIV–MOORE.**

United States District Court, S.D. Florida, Miami Division.

June 11, 2002.

Paul G. Gill, U.S. Department of Justice, Tax Division, Washington, DC, for Appellant.

Susan D. Lasky, Lasky, Bigge & Rodriguez, Fort Lauderdale, FL, for Appellee.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE is before the Court upon Appellant's Notice of Bankruptcy Appeal (DE# 1).

UPON CONSIDERATION of the Appeal, the Responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

Appellant, The United States of America (the "United States" or "Appellant") commenced an action in the United States District Court for the Southern District of Florida against Appellee Stanley M. Spiwak ("Appellee" or "Spiwak" or "Debtor"), his wife Grethe Aarnes Spiwak, the Grethe Aarnes Trust, and Shaw Realty, Inc. entitled *United States of America v. Stanley M. Spiwak, et al.*, Case no. 93–7001–CIV–GONZALEZ. Following trial, on July 24, 1995, the District Court entered judgment against the Spiwaks in the amount of $456,344.50, for the Spiwaks' unpaid income tax liabilities for the years 1977–79, 1981–83, and 1986. The District Court also entered an Order of Foreclosure, finding that the federal tax liens against the Spiwaks applied to their home at 3100 N.E. 47th Court, # 302, Fort Lauderdale, Florida (the "condominium") and authorizing the United States to foreclose its liens. The condominium was nominally owned by the Grethe Aarnes Trust and encumbered by a Shaw Realty mortgage held to be null and void.

On June 14, 1996, three days before the scheduled foreclosure sale of the condominium, Spiwak filed his bankruptcy petition. Spiwak commenced an adversary proceeding seeking a judgment that his income tax liabilities were dischargeable. The United States filed a motion to dismiss on the grounds that the income tax liabilities were nondischargeable under 11 U.S.C. § 523(a)(1)(C). The Bankruptcy Court treated the motion to dismiss as a motion for judgment on the pleadings, and subsequently denied the motion.

On July 7, 1997, the issue of whether the income tax liabilities were dischargeable under 11 U.S.C. § 523(a)(1)(C) was tried before the Bankruptcy Court. Stating its findings of fact and conclusions of law on the record, the Bankruptcy Court entered judgment in Spiwaks' favor. That same day, the Bankruptcy Court entered its Final Judgment Discharging Income Tax Liability, discharging Spiwaks' income tax liabilities for the years 1977–1979, 1981–1983, and 1986.

The United States now appeals the Final Judgment Discharging Income Tax Liability dated July 10, 1997 and the Memorandum Decision Denying Motion to Dismiss by United States of America and Denying *Ore Tenus* Motion to Render a Judgment on the Pleadings as to Count I dated March 26, 1997. The United States presents the following issues on appeal:

1. Whether the Bankruptcy Court erred in denying the United States' Motion for Judgment on the Pleadings.

2. Whether the Bankruptcy Court erred in concluding that the debtor did not have the wherewithal to pay his tax liabilities.

3. Whether the Bankruptcy Court erred in concluding that the United States had not met its burden of proving that the debtor had willfully attempted in any manner to evade or defeat his tax liabilities.

## DISCUSSION

### A. Standard of Review

A district court reviewing a bankruptcy appeal is not authorized to make independent factual findings; that is the function of the bankruptcy court. *In re Sublett*, 895 F.2d 1381, 1383–84 (11th Cir.1990). Factual findings made by the bankruptcy court are subject to a clearly erroneous standard. *Continental Nat. Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1344 (11th Cir.1999). Conclusions of law are subject to *de novo* review. *In re Calvert*, 907 F.2d 1069, 1070 (11th Cir.1990). Equitable determinations

are reviewed for abuse of discretion. *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883 (11th Cir.1990).

### B. The Bankruptcy Court's Denial of the United States' Motion for Judgment on the Pleadings

The United States asserts that it was error for the Bankruptcy Court to deny its Motion for Judgment on the Pleadings as (1) the District Court's finding that Spiwak had established a sham corporation necessarily rested on the premise that Spiwak acted a fraud upon the government, (2) Debtor's recording of his transactions does not validate them, and (3) fraudulent intent should be presumed.

Appellee asserts that the District Court's Order subjecting the Spiwak trust property to foreclosure by the Internal Revenue Service was based on two distinct theories, both of which did not concern fraudulent transactions. First, Ms. Spiwak had a present beneficial interest in the trust and Spiwak had a future interest in the trust. Therefore, the tax liens would attach to their beneficial interest as a matter of federal law. Second, the District Court noted that the trust was a sham, and that the trust held the property at issue as a "nominee" of the Spiwaks. The District Court found that the trust was properly classified as a sham, as it granted "almost total control to the beneficiaries, the Spiwaks. The trust's only asset serves as the personal residence of the defendants Stanley and Grethe A. Spiwak...The taxpayers have exercised complete control over the trust's sole asset since its acquisition, even to the extent of having a controlled corporation ostensibly hold a mortgage on the property and institute a foreclosure proceeding against the property."[1]

Appellee argues that the application of the nominee doctrine does not involve an inquiry into the existence of a fraudulent conveyance or the Debtor's intentions to evade or defeat the tax at issue. Appellant asserts that had the Court not found fraud to exist, then the federal tax liens would have attached only to whatever limited interest the Spiwaks retained under the trust terms, and that the mortgage held by Shaw Realty would have held priority over the tax lien of the United States. In support of its argument, the United States refers to *Dallas Nat'l Bank v. United States,* 167 F.2d 468 (5th Cir.1948). In *Dallas Nat'l Bank,* the Fifth Circuit found that a federal lien for income taxes would attach to the taxpayer's equitable interest in the corpus of the trust estate, although provisions existed preventing its sale or alienation. *Id.* at 469. Appellant avers that this case stands for the proposition that had the Spiwak transaction not been fraudulent, then the federal tax lien would only have attached to the interest the Spiwaks retained in the condominium. The Court does not find that this case clarifies the issue at hand. Rather, *Dallas Nat'l Bank* simply holds that a federal tax lien may be enforced against a taxpayer's income from trust property. The Court did not discuss how the lien would otherwise be enforced in the absence of fraud, nor did it discuss this differentiation.

Similarly, Appellant cites *United States v. McCombs,* 928 F.Supp. 261, 267–72 (W.D.N.Y.1995) for the proposition that absent a fraudulent transaction, the mortgage held by Shaw Realty would have held priority over the tax lien asserted by the United States. The undersigned finds this case to be instructive, as the Court did not allow the government to enforce a 1984 tax lien against a property because the government did not carry its burden of dem-

---

1. July 26, 1995 District Court Order, at 8–9.

onstrating that the conveyance was fraudulent. *Id.* at 277–278.

The District Court allowed the lien against the mortgage held by Shaw Realty, and therefore necessarily found that fraud tainted the transaction. Appellee argues that fraudulent conveyance issues are separate causes of action from inquiries into the application of the nominee doctrine. Appellee's authority, the case *Libutti v. United States,* 894 F.Supp. 589, 598 (N.D.N.Y.1995), does not hold that nominee inquiries cannot and do not involve determinations of the existence of fraud in transactions. In addition, the fact that typical nominee inquiries do not involve liability determinations of civil tax fraud or criminal tax fraud does not preclude the District Court's finding that fraud necessarily permeated the trust transaction.

The Court finds it instructive that the District Court, rather than simply stating that the trust property was held as a nominee of the Spiwaks, called the trust a "sham." Nominee inquiries generally address the manner in which a taxpayer treats a property, while fraudulent conveyance questions concern the validity of a trust upon its creation. The District Court's identification of the trust property as a sham indicates that the Court considered the validity of the trust in conjunction with the manner in which Spiwak treated the instrument of his creation *See In re Richards,* 231 B.R. 571, 579 (E.D.Pa.1999).

■ Appellant asserts that under the doctrine of collateral estoppel, the issue of Spiwak's fraudulent transaction has been established and cannot be relitigated. Collateral estoppel is appropriate when the following three elements are present: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must

have been a critical and necessary part of the judgment in that litigation. *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987) (citing *In re Held,* 734 F.2d 628, 629 (11th Cir.1984)).

The undersigned finds that the Bankruptcy Court, while relying on the status of the trust as a sham in its ruling, did not specifically rule on the dischargeability of the Debtor's debt. Bankruptcy Judge Raymond B. Ray stated in his Memorandum Order that the Bankruptcy Court did not find that the issue of the dischargeability of Debtor's debt had been litigated before the District Court for the purposes of application of the collateral estoppel doctrine.

The Court agrees with Appellant that the District Court's allowance of the federal tax lien to take priority over the Shaw Realty mortgage may imply a finding of fraud. However, the Bankruptcy Court is to make a factual determination as to whether evidence of a willful attempt to evade taxes exists upon an examination of the totality of the circumstances.

## C. Debtor's Ability to Pay His Tax Liabilities

■ The Bankruptcy Court's factual determination that Debtor was unable to pay his tax liabilities is reviewable by this Court under a clearly erroneous standard. *Toledo,* 170 F.3d at 1344. Appellant states that the finding that the Debtor did not have the means to pay his liabilities is contrary to the evidence.

■ Appellee asserts that there is no evidence of income on behalf of Spiwak after 1983. The Honorable Francis G. Conrad, a visiting Judge of the United States Bankruptcy Court, stated at trial on July 7, 1997 that the Internal Revenue Service and the United States failed to provide any evidence concerning Debtor's

ability to pay.[2] However, the Debtor's 1986 tax return reported a $40,523.75 tax liability. This is in direct conflict to the Bankruptcy Court's and Appellee's assertion that Debtor did not earn income after 1983.

The United States asserts that Debtor did have the ability to pay, as evidenced by his use of the sham trust, his participation in tax shelters, and his receipt of money from friends. Spiwak asserts that the tax shelters did not provide him with income and that he used the money given to him for personal expenses. Under the holding of *In re Haas*, 48 F.3d 1153, 1156 (11th Cir.1995) this does not preclude a debtor's access to discharge of his liabilities.

The undersigned holds that the Bankruptcy Court's finding that Debtor did not have the wherewithal to pay his tax liabilities is clearly erroneous in light of Debtor's reported liability in 1986.

### D. Dischargeability of Spiwak's Income Tax Liabilities

The United States asserts that Spiwak's income tax liabilities were not dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). This section of the Bankruptcy Code provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty ...

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

11 U.S.C. § 523(a)(1)(C).

The Eleventh Circuit, in *In re Haas*, 48 F.3d 1153 (11th Cir.1995) found that a knowing failure to discharge one's tax obligations does not qualify as a willful attempt "in any manner to evade or defeat such tax" pursuant to 11 U.S.C. § 523(a)(1)(C). Therefore, a failure to pay a tax liability does not preclude the dischargeability of such debt upon a declaration of bankruptcy.

However, in *In re Griffith*, 206 F.3d 1389 (11th Cir.2000) (en banc), *cert. denied*, 531 U.S. 826, 121 S.Ct. 73, 148 L.Ed.2d 37 (2000), the Eleventh Circuit abrogated in part the *Haas* decision. In *Griffith*, the Eleventh Circuit reaffirmed that the mere nonpayment of taxes, without more, does not constitute a willful attempt to evade or defeat taxes. *Id.* at 1395. However, the Eleventh Circuit held that a tax liability is nondischargeable under 11 U.S.C. § 523(a)(1)(C) when a debtor engages in affirmative acts seeking to evade or defeat collection of taxes. *Id.* at 1395.

The creditor bears the burden of demonstrating, by a preponderance of the evidence, that a particular claim is nondischargeable under 11 U.S.C. § 523(a)(1)(C). *Id.* at 1396 (*citing Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). There is both a conduct and mental state requirement under 11 U.S.C. § 523(a)(1)(C). *Id.* at 1396 (citing *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996)). For the conduct requirement, the creditor must demonstrate that the debtor sought to evade or defeat his tax liability in any manner. *Id.* at 1396. For the mental state requirement, the creditor must demonstrate that the debtor acted willfully. *Id.* at 1396. A three-prong test may be used to determine whether a debtor's failure to pay taxes was willful: (1) whether the debtor had a duty under the law; (2) whether the debtor knew he had that duty; and (3) whether

---

**2.** July 7, 1997 Trial Transcript, at 88–89.

the debtor voluntarily and intentionally violated that duty. *Id.* at 1396 (citing *In re Bruner,* 55 F.3d 195, 197 (5th Cir.1995)).

 The determination whether the Debtor willfully attempted to evade payment of taxes is a question of fact for the Bankruptcy Judge to determine from the totality of the record. *United States v. Uria,* 180 B.R. 688, 691 (S.D.Fla.1995) (citing *In re Berzon,* 145 B.R. 247, 250 (Bankr.N.D.Ill.1992)). The Bankruptcy Court's factual findings are subject to review under a clearly erroneous standard by the District Court. Legal conclusions resulting from the Bankruptcy Court's findings are subject to *de novo* review.

Appellant argues that the Bankruptcy Court erred in determining that Appellant had not met its burden of showing that the Debtor willfully attempted to evade or defeat his tax liabilities. In support of its argument Appellant states that Spiwak controlled the mortgage on his home, abandoned the foreclosure suit when he discovered that the United States did not have a lien on the condominium, failed to maintain bank accounts, accepted money as gifts from friends, and placed money into tax shelters.

Appellant states that badges of fraud existed throughout Debtor's transactions, as Debtor did not have personal bank accounts, yet paid personal expenses from the accounts of businesses he owned. *See* Exhibit KK ¶ 18. *See In re Spirito,* 198 B.R. 624, 629 (Bankr.M.D.Fla.1996) (finding an exception to discharge where debtor converting joint bank account to a nominee account). Debtor also enabled a corporation owned by a trust funded by his father to acquire the mortgage on his condominium. Debtor also admits that he initiated a foreclosure proceeding, which he later abandoned upon the discovery that the United States did not have a lien against the property.

 Courts have relied on well-defined badges of fraud in order to presume fraudulent intent to transfer, as direct proof of fraudulent intent is rarely present. *In re Landen,* 1997 WL 416437, *5–6 (Bankr.M.D.Fla.1997). The Eleventh Circuit has identified certain types of conduct as badges of fraud which will serve as circumstantial evidence of the existence of willful intent to evade taxes. These types of conduct include: (1) the recurrence of the understatement of income for more than one tax year, (2) the understatement of income, (3) implausible or inconsistent explanations of behavior, (4) inadequate records, (5) transfer of assets to a family member, (6) transfer for inadequate consideration, (7) transfer that greatly reduced assets subject to IRS execution, and (8) transfers made in the face of serious financial difficulties. *Id.* No one factor is determinative; the analysis proceeds on the totality of the circumstances. *In re Greene,* 207 B.R. 21, 24–25 (Bankr. M.D.Fla.1997).

 The existence of several badges of fraud will justify a finding of fraud, but the inference established is a rebuttable one. *Advest, Inc. v. Rader,* 743 F.Supp. 851, 854 (S.D.Fla.1990). While badges of fraud appear to have existed in Debtor's case, the Bankruptcy Court accordingly found that under the totality of the circumstances, there was no affirmative act by Debtor to evade his tax obligations. The Bankruptcy Judge stated on the record that (1) there was no evidence to show that the trust established provided a source of income, (2) the condominium appeared to be registered under the trust so that the Debtor's child could cohabitate with Debtor, (3) Debtor tried to settle his obligations with the United States, and (4) Debtor did not conceal any of his transactions.

As Appellant has provided information demonstrating that Debtor reported tax liability in 1986, three years after he allegedly ceased earning an income, the Court REVERSES and REMANDS the Bankruptcy Court's finding that Debtor did not willfully evade his tax obligations.

The Bankruptcy Court is instructed to examine Debtor's 1986 tax liability in light of the existing facts of the above-styled matter, and to make a determination, based on the totality of the circumstances, as to the existence of a willful evasion on behalf of Debtor.

### CONCLUSION

Based on the foregoing, it is hereby ORDERED and ADJUDGED as follows:

(1) The Bankruptcy Court's Final Judgment Discharging Income Tax Liability dated July 10, 1997 is REVERSED and REMANDED.

(2) The Bankruptcy Court's Memorandum Decision Denying Motion to Dismiss by United States of America and Denying *Ore Tenus* Motion to Render a Judgment on the Pleadings as to Count I dated March 26, 1997 is REVERSED and REMANDED.

The Clerk of the Court is directed to mark this case as CLOSED.