In re Martin L. HARRIS, Jr., Debtor.

Martin L. Harris, Jr., Plaintiff,

v.

United States of America, Defendant.

Bankruptcy No. 03–14012.
Adversary No. 03–1210.

United States Bankruptcy Court,
S.D. Alabama,
Southern Division.

May 5, 2005.

Wendy K. Vann, Charles Baer, for United States.

Irvin Grodsky, Mobile, AL, for Martin L. Harris, Jr.

## ORDER

WILLIAM S. SHULMAN, Chief Judge.

This matter is before the Court on the motion for summary judgment filed by the United States (sometimes hereinafter referred to as "IRS"). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). After consideration of the pleadings, evidence, briefs, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

The debtor filed a petition under Chapter 7 of the Bankruptcy Code on July 16, 2003. He then filed this adversary proceeding to determine the dischargeability of certain federal income tax liabilities for the years 1990 through 1999. The debtor has conceded that taxes for the years 1990, 1991, 1992, and 1993 are nondischargeable but still disputes the accuracy of the amounts claimed by the Internal Revenue Service. The United States has conceded that debtor's federal income tax liability for the tax year 1999 is moot since the debtor had no assessed taxes for that year. In addition, the United States does not contest that the tax penalties assessed against the debtor with respect to the tax years 1990 through 1998 are dischargeable. The remaining tax years at issue are 1994 through 1998.

According to the deposition of the debtor, he has been a sales representative of Trane Air Conditioning since 1981 and, as an independent contractor, sells Trane products. He has attended some college and received specialized training on heating, ventilation and air conditioning units.

From 1990 through 1998, the debtor earned substantial income. As determined by the IRS, debtor had adjusted gross income for tax years 1990 through 1993 as follows:

1990—$130,528.00
1991—$148,516.00
1992—$164,359.00
1993—$247,994.00

The debtor failed to file any tax returns for the tax years 1990 through 1993. For each of the tax years 1994 through 1996, the federal income tax returns were filed late (these were filed on June 15, 1998). The adjusted gross income as reported on those tax returns is as follows:

1994—$150,377.00
1995—$303,228.00
1996—$300,546.00

For the tax years 1997 through 1999, the debtor filed timely returns and reported adjusted gross income for said years:

1997—$260,291.00
1998—$147,045.00
1999—$73,050.00

For the tax years 1990 through 1997, the debtor made no estimated tax payments. Evidence shows that the debtor's first voluntary estimated tax payments, absent withholdings, was during 1998. The debtor has admitted in his deposition that he failed to make voluntary estimated tax payments other than for the tax years 1998 and 1999. Even as of the date the briefs were filed in this adversary action, the debtor had not yet filed his tax returns for the tax years 2000 through 2003.

The debtor had filed federal income tax returns in the past and was aware that April 15 is the deadline for filing returns and that extensions could be obtained through October. He understood the

need to maintain records. In his deposition, the debtor said that he cannot remember why he failed to file tax returns for 1990 through 1993. He also explained that he was distracted by personal difficulties, including divorces, chemical and alcohol dependency, gambling, attention deficit disorder, obesity, business losses, and investment losses, as well as other personal problems. Even with these difficulties, he admitted that he was able to earn a living and perform his job during this period of time. The debtor claims he is a "functional alcoholic" whose addiction did not affect his ability to pay other bills or perform most daily tasks. He stated that he eventually filed tax returns for 1994 through 1999 because he was contacted by the IRS which had begun to garnish his wages.

The bankruptcy schedules filed by the debtor reveal that the Internal Revenue Service is the largest creditor of the debtor. The debtor not only failed to pay federal income taxes, but also failed to pay taxes to the State of Alabama. The debtor scheduled the Internal Revenue Service being owed approximately $1,467,569.00 and the State of Alabama $207,709.00. The balance of his scheduled unsecured debt totaled $44,269.00.

Because of his tax indebtedness, the debtor was unable to obtain financing for the purchase of a home that he was leasing. The father of Allison Harris, the debtor's second wife, negotiated a purchase of the home and also provided the funds to allow the home to be bought with the stipulation that it be placed in the name of Allison Harris. Debtor's father-in-law held a vendor's lien on the home and payments on the vendor's lien were made from the joint checking account of the debtor and his wife. During this period of time, Mrs. Harris was not working.

The debtor admitted in his deposition that he failed to disclose his interest in a time share at Orange Beach, Alabama to the IRS when he submitted a Collection Information Statement and that he also failed to disclose that asset on his bankruptcy schedules. He stated that he failed to list the time share because he "didn't consider it to be real property", "didn't have a deed", and "considered it to be more of a liability than an asset".

The debtor estimated that during the 1990's, at a time when he was not paying his taxes, he invested approximately $10,000.00 in mutual funds and between $15,000.00 to $20,000.00 in stocks. He also held investments in other types of property entitling him to the use of time share property at Disney World that had an estimated value of approximately $20,000.00.

During the same period of time, the debtor paid for renovations on the house owned by his wife that cost over $30,000.00. He had a house cleaning service and a lawn care service and spent between $15,000.00 and $20,000.00 on furnishings such as a silk oriental rug, a marble top table, and a big screen television. He paid tuition for his daughter to attend private school and bought expensive, designer brand clothes for his wife and himself. The debtor and his family took vacations to Colorado, Cancun, and three trips to Disney World during this period of time. He also made a gift of approximately $10,000.00 to a nephew for his education. The debtor also gambled on a regular basis spending at least a $1,000.00 on an average monthly basis.

Due to the nature of his business, the debtor frequently had to entertain clients. This entertainment would consist of trips to the French Quarter in New Orleans where he would pay for his guests to attend professional football games and stay in first class hotels, at times paying as much as $931.00 for two nights for two couples. When asked how he spent the

majority of his income from 1990 to the present, the debtor stated "lifestyle and reinvestment into my business in terms of client goodwill." He further described his lifestyle as monogrammed shirts, expensive shoes, the types of automobiles he had purchased or leased, private schools, and gambling. Client entertainment included his own entertainment, that of his wife, trips to the New Orleans Saints' games, shopping trips, massages and pedicures for his wife.

Within the same period of time, the debtor bought, leased or traded the following vehicles for his wife and himself: a Nissan 300 ZX, Chevy G–20 Explorer Conversion Van, Lincoln Towncar, Mercedes convertible, GMC Sierra pickup, and a Volvo. Most of these vehicles were purchased used and the Volvo was leased. The debtor also lost money on a speculative oil venture when he invested approximately $200,000.00 in Advent Oil, all but $24,000.00 of which was eventually lost.

## CONCLUSIONS OF LAW

Bankruptcy Rule 7056 provides that Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div.*, 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied*, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). A plain reading of Rule 56(c) dictates that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Only disputes over facts relevant to the ultimate outcome of a case are material. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. *See also, United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir.1991); *Sintz, Campbell, Duke and Taylor v. United States*, 197 B.R. 351, 354 (S.D.Ala.1996).

The nonmoving party may not rest on mere allegations. *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir.1996), *cert. denied*, 519 U.S. 1118, 117 S.Ct. 964, 136 L.Ed.2d 849 (1997); *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir.1990); *Townson v. Secretary of Treasury*, 896 F.Supp. 1155, 1157 (S.D.Ala. 1995). Moreover, the courts will not entertain immaterial or insubstantial doubts as to material facts to defeat a summary judgment motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Townson*, 896 F.Supp. at 1158. Rather, the nonmoving party must come forward with evidence that is "significantly probative," in the sense that it creates an issue which may not be resolved until the trier of fact has the opportunity to assess the credibility of the witnesses. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505; *Sintz*, 197 B.R. at 354.

The United States contends that the debtor has willfully evaded his tax liabilities for the years in question. In support of this contention, the United States refers to the following facts: (1) The debtor's lack of a plausible reason why he failed to file tax returns, filed some tax returns late, and failed to pay taxes, (2) the debtor earned significant income during this period of time and lived a lavish lifestyle, in

part, supported by his failure to pay taxes, and (3) the debtor concealed certain real property; and comingled his business and personal funds.

The debtor counters that his inability to pay taxes was caused by the following factors: (1) the debtor's income was spent on living expenses for his family, on entertainment expenses for his clients and on support payments to his first wife, (2) his failure to pay taxes and file returns was caused by alcohol and drug dependency and gambling problems and a litany of personal problems, (3) and that he used his income to merely pay for expenses other than taxes.

Section 523(a)(1)(C) of the Bankruptcy Code provides as follows:

(a) a discharge under § 727 ... of this title does not discharge an individual debtor from any debt-

(1) for a tax or a customs duty...

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax ...

11 U.S.C. § 523(a)(1)(C).

■ The government bears the burden to prove its case by a preponderance of the evidence. *In re Griffith,* 206 F.3d 1389, 1396 (11th Cir.2000) (citing *Grogan v. Garner,* 498 U.S. 279, 287–288, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). The general rule is that discharge is to be strictly construed in favor of the debtor. *Griffith,* 206 F.3d at 1394.

■ Under § 523(a)(1)(C), the United States must satisfy a two-prong test. First, the United States must show that debtor engaged in conduct, either acts of commission or acts of omission, to avoid the payment or collection of taxes. *In re Fretz,* 244 F.3d 1323, 1329 (11th Cir.2001). Second, the government must show that the conduct engaged in by the debtor was willful. *Fretz,* 244 F.3d at 1330. The con-

duct requirement is that the debtor "attempted in any manner to evade or defeat [a] tax," while the mental state requirement is that this attempt was done willfully. *Fretz,* 244 F.3d at 1327. A debtor's attempt to avoid tax liability is "willful" if it is done voluntarily, consciously, or knowingly, and intentionally. *Griffith,* 206 F.3d at 1396–1397. Willfulness means (1) the debtor had a duty to file tax returns and pay the tax obligations under the law, (2) the debtor knew he had the duty, and (3) the debtor voluntarily and intentionally violated that duty. *Griffith,* 206 F.3d at 1396.

### Mental Requirement

■ The debtor clearly had a duty to file income tax returns and pay taxes and knew of that duty. The law provides that income from whatever source derived is taxable. 26 U.S.C. §§ 1, 61. The debtor indicated in his deposition that he knew tax returns were due to be filed on April 15 and understood the requirements of filing federal income tax returns and had filed such returns in the past.

■ The issue before the Court is whether the debtor voluntarily and intentionally violated his duty to report and pay taxes. The debtor has conceded that the taxes for the years 1990 through 1993 are nondischargeable but disputes the amount. With respect to the years that the debtor filed late tax returns, that is 1994, 1995 and 1996, the United States has met their burden with respect to the mental state requirement. That is, the debtor voluntarily and intentionally violated his duty to timely file income tax returns and failed to pay taxes. *Fretz,* 244 F.3d at 1330. On page six of his brief in opposition to the motion for summary judgment, debtor asserts that the government failed to satisfy the mental requirement for 1997, 1998 and 1999 tax years. By implication the debtor

conceded the mental requirement for the remaining years at issue. The debtor filed his taxes timely in 1997 and 1998, although he did not voluntarily make payments on his tax liabilities during the calendar year 1997. He did make some voluntary estimated tax payments during the tax year of 1998. The fact that the debtor timely filed returns for both 1997 and 1998 shows that he did not voluntarily and intentionally violate his duty to report his tax obligations. The Court holds that the United States has satisfied the mental state requirement of § 523(a)(1)(C) for the tax years at issue, except for the tax years 1997 and 1998. It is clear that for all other tax years at issue, the debtor ignored his tax responsibilities. Even though the debtor had alcohol and chemical dependency problems, he was able to earn substantial income. The actions of the debtor show a willful failure to file or pay his taxes.

### Conduct Requirement

■ In order to determine whether tax obligations are dischargeable under the Bankruptcy Code, courts look to the totality of the debtor's circumstances and the individual facts surrounding that debtor's case. *United States v. Spiwak, (In re Spiwak)*, 285 B.R. 744, 751 (S.D.Fla.2002). The conduct requirement under § 523(a)(1)(C) encompasses acts of omission by the debtor as well as affirmative acts to evade tax liability. *Fretz*, 244 F.3d at 1330; see also *Griffith*, 206 F.3d at 1394. The mere nonpayment of tax liability, though relevant evidence under the totality test, is not sufficient to warrant an exception from discharge under § 523(a)(1)(C) without more. *Fretz*, 244 F.3d at 1328; *Haas v. IRS*, 48 F.3d 1153, 1156 (11th Cir.1995). However, the Eleventh Circuit has determined that the conduct requirement is satisfied under § 523(a)(1)(C) when a debtor fails to pay tax obligations if it is coupled with a failure

to also file tax returns. *Fretz*, 244 F.3d at 1329.

*Fretz* involved a taxpayer who did not file his tax returns and did not pay the taxes. As stated by the court,

For all of these reasons, we hold § 523(a)(1)(C) covers both acts of comission and acts of omission. Dr. Fretz' failure to file tax returns, coupled with his failure to pay taxes, satisfy the conduct requirement of § 523(a)(1)(C). *Fretz*, 244 F.3d at 1330.

■ The debtor has already conceded that tax liabilities for the tax years 1990 through 1993 are nondischargeable since he failed to file and failed to pay any tax liabilities for those years. For the tax years 1994 through 1998, the debtor has argued that because returns were filed (even though late for the years 1994 through 1996) the debtor did not commit any affirmative acts to evade or defeat the tax. Instead, the debtor insists that he only failed to pay taxes as to the years in question. The debtor relies on that part of *Haas v. IRS* that held "...Congress did not intend that a failure to pay taxes, without more, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy." *Haas*, 48 F.3d at 1157 (11th Cir.1995) abrogated in part by *In re Griffith*, 206 F.3d 1389, 1395–96 (11th Cir.2000) (*en banc*). Courts recognize numerous indicia of fraud including understatement of income; implausible or inconsistent explanations of behavior; inadequate records; concealment of assets; failure to cooperate; transfer of assets to a family member; transfers for inadequate consideration; transfers that greatly reduced assets subject to IRS execution; lavish lifestyle; and transfers made in the face of serious financial difficulties. *In re Griffith*, 206 F.3d 1389 (11th Cir.2000); *In re Spiwak*, 285 B.R. 744, 751 (S.D.Fla.2002); *Landi v. United States*, 289 B.R. 173

(Bankr.S.D.Fla.2002). No single one of these factors is determinative, however, the presence of multiple factors gives rise to a rebuttable presumption of willful evasion. *In re Hassan*, 301 B.R. 614, 621 (S.D.Fla.2003). As set forth below, the Court finds that the debtor has engaged in implausible behavior, failed to fully cooperate with the IRS, transferred by gift the sum of $10,000.00 to a family member, spent substantial sums of money and at the same time avoided any accumulation of assets that the IRS could seek execution on, and maintained an extravagant lifestyle while failing to pay his tax obligations.

The debtor in this case is an experienced businessman who has failed to provide a satisfactory explanation for his failure to pay nine years of tax liabilities, to make estimated tax payments for the tax years 1990 through 1997, to file tax returns for years 1990 through 1993, and to timely file tax returns for the tax years 1994 through 1996. As in the *Fretz* case, the debtor in the instant case claims that his chemical and alcohol dependency, divorce, depression and feeling of helplessness contributed to his failure to pay taxes, and for the years 1990 through 1996, file or timely file returns. However, the debtor was certainly able to perform the requirements of his sales job, and apparently, judging by his substantial income, was highly successful. It is clear that the debtor could have filed and paid his taxes but simply chose not to do so. Instead, he embarked on a lifestyle that included spending his money on anything but his taxes. The Court finds that the debtor's conduct is implausible in this regard. The debtor's brief points to the fact that the debtor did not purchase extravagant assets during this nine year period of time. Indeed, while not acquiring any significant assets (other than his speculative investment in an oil venture in which he lost about $175,000.00), the debtor continued his free-spending habits on his business clients as well as on his family and himself. The United States argues that this is tantamount to the debtor affirmatively attempting to evade the payment of his delinquent taxes.

In reviewing the bankruptcy schedules of the debtor, the largest creditors are the IRS and the Alabama Department of Revenue. The debtor had a loan with an individual for $35,000.00, a bank loan for $6,266.00 and a judgment for $1,202.00. The relatively small amount of debt, when compared to the scheduled tax liabilities, indicates that during the period of time that he failed to pay his taxes, he was supporting his expensive lifestyle and paying his other creditors.

The debtor admitted that he did not separate his personal funds from his business funds. However, debtor was merely an employee of the Trane Company. There was no evidence that he operated through a corporation or a limited liability company. He used his checking account to pay both personal bills and expenses that he was responsible for in regard to entertaining clients.

 The United States has alleged that the debtor concealed ownership of the homeplace. The evidence shows otherwise. At a time when the debtor was unable to obtain credit for the purchase of a home because of his tax obligations, his father-in-law provided the financing for a home. The uncontradicted evidence shows that his father-in-law insisted on placing the home in his daughter's name because of the debtor's tax problems. His father-in-law arranged the financing by a vendor's lien on the property. This transaction was not concealed nor fraudulent.

In summary, the debtor is an experienced businessman who has failed to provide a plausible explanation for his failure to pay nine years of tax liabilities or make estimated tax payments for the tax years 1990 through 1997. He failed to file re-

turns for the tax years 1990 through 1993, and to timely file tax returns for the years 1994 through 1996. Even as of the time the debtor initiated the adversary proceeding in this case to determine dischargeability of taxes, he had failed to file tax returns for the tax years 2000 through 2003. The debtor entertained clients, treated his wife and himself to luxury hotels in the French Quarter and tickets to professional sporting events. He purchased expensive gifts for his wife, including a Mercedes convertible. He sent his daughter to private school, continued to gamble on a regular basis and even gave $10,000.00 to his nephew for college tuition. Between 1993 and 1998, he allowed others to live in a condominium without charging rent (although in the case of one individual, the free rent was in lieu of increasing salary). The debtor failed to cooperate with the IRS when he submitted a collection information statement and failed to disclose his ownership interest in a time share at Orange Beach. During the tax years in question, he spent money furnishing his home, employing a house cleaning service and a lawn care service, taking vacations to Colorado, Cancun, and three trips to Disney World. In his deposition testimony, the debtor admitted that he was in control of how much to spend on client entertainment and yet he continued to spend with no regard to payment of taxes. As stated in the case of *In re Peterson,* 317 B.R. 556, 564 (Bankr.N.D.Ga.2004), "[e]ven though not conclusive as to whether tax debts will be discharged under the Code, a debtor's spending habits during the tax years in issue are relevant under the totality test."

While the debtor has not hidden income, understated income or failed to maintain records, he embarked on a lifestyle of spending while totally ignoring his obligation to timely file returns and pay taxes. The Court finds that the United States has met its burden with respect to the conduct requirement § 523(a)(1)(C) by showing debtor's acts of omission and his affirmative acts to evade his taxes.

Now, therefore, it is hereby ORDERED, ADJUDGED and DECREED that the motion for summary judgment is granted in part and denied in part as follows:

1. With respect to the tax years 1990, 1991, 1992, 1993, 1994, 1995, and 1996, the motion for summary judgment is GRANTED and the tax indebtedness for said years is declared nondischargeable.

2. With respect to tax years 1997 and 1998, the motion for summary judgment is hereby DENIED.

3. With respect to the tax year 1999, the issue is MOOT since the United States concedes that there were no taxes due for said year.

4. The tax penalties assessed against the debtor with respect to the tax years 1990 through 1998 are determined to be dischargeable.