**In re Douglas Neil ZIMMERMAN, Debtor.**

**Douglas Neil Zimmerman, Plaintiff/Appellant,**

**v.**

**United States of America, Department of the Treasury, Internal Revenue Service, Defendants/Appellees.**

**No. 06–80128–CIV.**

United States District Court, S.D. Florida.

Aug. 8, 2006.

David Lloyd Merrill, Stuart, FL, for Debtor.

Frank M. Dale, Jr., U.S. Department of Justice, Tax Division, Washington, DC, for Internal Revenue Service.

## ORDER AFFIRMING ORDERS OF BANKRUPTCY COURT

GOLD, District Judge.

THIS CAUSE came on before the Court upon two orders entered by United States Bankruptcy Judge Barry Schermer on December 12, 2005. Judge Schermer first entered an order of Final Judgment in favor of Appellee/ Creditor United States of America, Department of Revenue, Internal Revenue Service ("IRS") on that date. In support of that Order, Judge Schermer also issued Findings of Fact and Conclusions of Law also on that date.

In the Final Judgment and the Findings of Fact and Conclusions of Law, Judge Schermer concluded that Appellant's unpaid federal tax liabilities for years 1977, 1978 and 1979 were "excepted in accordance with 11 U.S.C. § 523(a)(1)(C) from any discharge to which the Plaintiff may be entitled under 11 U.S.C. § 727." The bankruptcy court concluded that these taxes were nondischargeable because Appellant willfully attempted to defeat or evade payment of such taxes.

Based on this conclusion, Judge Schermer entered a final judgment in favor of Appellee IRS in the amount of $1,023,056.72 plus additional interest from August 3, 2005. Appellant now seeks appellate review of the bankruptcy court's determination that his federal tax liability for the years 1977, 1978 and 1979 are nondischargeable. Appellant filed his Initial Brief [DE # 7] on March 16, 2006. Appellee IRS filed its Initial Brief [DE # 11] on April 17, 2006. Appellant failed to file a Reply brief and the time for doing so has passed. I held oral argument on the appeal on June 1, 2006.

### I. Background

Appellant Douglas Neil Zimmerman ("Appellant") was a licensed certified public accountant in New York and New Jersey. From 1970—1985, Appellant was a partner in two accounting firms, earning $75,000.00 a year. Appellant was not employed after 1985 although he received an allowance of $75,000.00 a year from his father from 1985—2003.

In 1985, Appellant filed his first bankruptcy petition. Appellant filed a Chapter 11 bankruptcy petition in the United States District Court for the Southern District of New York. The case was dismissed on March 30, 1990.

In 1995, Appellant and his brother controlled their father's finances through powers of attorney. On February 29, 1996, Appellant filed his second bankruptcy petition. This was a Chapter 7 bankruptcy case filed in the United States District Court for the District of New Jersey. The bankruptcy court in this case acknowledged that "a significant reason for the [Appellant's] filing of this [1996] bankruptcy was to discharge his federal tax liabilities." Appellant received a discharge in the 1996 bankruptcy case on June 10, 1996.

In September 1996, Appellant received $683,000.00 in stock into an account at Smith Barney from his father's own bank account. As of June 1997, the balance in Appellant's Smith Barney account was $1,000,000.00. Appellant used these assets "at will for all manner of personal expenses and obligations—except for his taxes." Appellant used the funds in the account to pay for the purchase of his home and to furnish the home. At trial, Appellant testified that his home is worth approximately $750,000.00.

In April 1997, Appellant purchased a car for his girlfriend Patricia Montifinese. He used these funds to pay one of her credit card bills in the amount of $8,023.34. Appellant supported Patricia Montifinese as she had no employment between 1995 and 2001.

On May 27, 1997, Appellant filed his third bankruptcy petition in the United States District Court for the District of New Jersey. Appellant failed to disclose that he had $1,000,000.00 in his Smith Barney Account to the bankruptcy court. Appellant filed the 1997 bankruptcy to avoid foreclosure of a mortgage on a home Appellant owned in New Jersey. The bankruptcy court dismissed Appellant's bankruptcy petition for failure to properly comply with the bankruptcy court order requiring the filing of schedules.

In January 1998, Appellee IRS served Appellant with a final demand for payment of Appellant's unpaid tax liability for years 1997 and 1998. Appellee IRS issued Appellant a Notice of Federal Tax Lien for tax years 1977, 1978 and 1979 on June 9, 1998. On June 16, 1998, Appellant transferred $200,000.00 to Patricia Montifinese in the form of a check. On June 18, 1998, Appellant transferred $81,502.27 to Patricia Montifinese. The bankruptcy court found that neither transfer was for consideration.

After Appellant made these transfers, Appellee IRS issued levies on Appellant's accounts at Salomon Brothers Funds, Smith Barney, Inc., Dreyfus Worldwide Dollar Money Market Fund, Dreyfus Trust Co. (Custodian) and GTE Corporation sometime after August 28, 1998. On September 3, 1998, Appellant transferred $114,000.00 to Patricia Montifinese drawn on his Smith Barney account. Appellant admitted transferring a total of $342,000.00 to his girlfriend Patricia Montifinese. This amount was used by Patricia Montifinese to purchase a home in New Jersey. Despite giving the funds to Patricia Montifinese to purchase the home, Plaintiff conceded that he has no interest in that home.

On September 16, 1998, Appellant filed another petition for bankruptcy in the United States District Court for the District of New Jersey. Appellant listed Appellee IRS as his sole creditor. In his Schedules, Appellant claimed that he owed Appellee IRS $593,000.00 for tax years 1977, 1978 and 1979. As Appellant had filed another petition for bankruptcy, Appellee IRS released its levies on Appellant's various brokerage accounts with Salomon Brothers Funds, Smith Barney, Inc., Dreyfus Worldwide Dollar Money Market Fund and Dreyfus Trust Co. on September 21, 1998.

Barely one month later, Appellant transferred all of the shares of his Smith Barney account to his father's Smith Barney account. The value at the time of the transfer was $997,040.48. Appellant continued to have control over these funds because Appellant had a power of attorney to control his father's Smith Barney account. The bankruptcy court again dismissed this bankruptcy case for Appellant's failure to file schedules.

On March 10, 2000, Appellant filed his first bankruptcy petition in the Southern

District of Florida. In his schedules, Appellant listed no significant, non-exempt assets. Appellant also failed to declare that he received an annual allowance of $75,000.00 from his father. Appellant did list Appellee IRS as a creditor holding an unsecured priority claim for $593,215.99 for tax years 1977, 1978 and 1979. Although a discharge was entered, the bankruptcy court later revoked Appellant's discharge because Appellant had received an earlier discharge within the six years preceding the filing of his 2000 bankruptcy.

On March 31, 2004, Appellee IRS issued a civil summons to Appellant to question him (and requiring him to produce records) related to financial matters from 1997 through 2002. Appellant filed the underlying bankruptcy on April 20, 2004 in order to avoid having to appear for the civil summons.

## II. Jurisdiction

The federal district courts have jurisdiction over appeals from final judgments, orders, and decisions in bankruptcy, pursuant to 28 U.S.C. § 158(a). The bankruptcy courts have subject matter jurisdiction based on 28 U.S.C. § 157(b).

## III. Order on Appeal

Appellant appeals the December 12, 2005 Final Judgment entered by the Honorable Barry Schermer, visiting Judge of the United States Bankruptcy Court for the Southern District of Florida. In this Final Judgment, Judge Schermer concluded that Appellant's unpaid federal tax liabilities for years 1977, 1978 and 1979 were "excepted in accordance with 11 U.S.C. § 523(a)(1)(C) from any discharge to which the Plaintiff may be entitled under 11 U.S.C. § 727." The bankruptcy court concluded that these taxes are nondischargeable because Appellant willfully attempted to defeat or evade payment of such taxes.

Based on this conclusion, Judge Schermer entered a Final Judgment in favor of Appellee IRS in the amount of $1,023,056.72 plus additional interest from August 3, 2005. Judge Schermer entered a lengthy order detailing his Findings of Fact and Conclusions of Law in support of the Final Judgment on December 12, 2005. Appellant now seeks appellate review of the bankruptcy court's determination that his federal tax liability for the years 1977, 1978 and 1979 are nondischargeable.

## IV. Standard

Conclusions of law made by bankruptcy courts are reviewed *de novo*. *See In re Optical Techns., Inc.*, 425 F.3d 1294, 1300 (11th Cir.2005). *De novo* review requires the Court to make a judgment "independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir. 1984). Where an issue raises a mixed question of law and fact, district courts are also instructed to review a bankruptcy court's determination *de novo*. *See In re Marks*, 131 B.R. 220, 222 (S.D.Fla.1991), *aff'd*, 976 F.2d 743 (11th Cir.1992).

11 U.S.C. § 523(a)(1)(C) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... for a tax or a customs duty ... with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The creditor, here, Appellee IRS, bears the burden of establishing by a preponderance of the evidence that the debt is nondischargeable under this chapter. *See In re Fretz*, 244 F.3d 1323, 1327 (11th Cir.2001); *see also In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000). In order to prove that the Section § 523 exception applies, Appellee IRS

must meet two requirements: "a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so willfully')." *Griffith*, 206 F.3d at 1396.

█ The conduct requirement includes "attempts to evade or defeat a tax whether accomplished by 'acts of culpable omission' [or] acts of commission." *In re Fretz*, 244 F.3d 1323, 1329 (11th Cir.2001) (citations omitted) (concluding that the failure to file tax returns, coupled with a failure to pay taxes, satisfies the conduct requirement of § 523(a)(1)(C)). The Eleventh Circuit has concluded that "intra-family transfers of property for little or no consideration" constitutes conduct covered by § 523(a)(1)(C). *See Griffith*, 206 F.3d at 1396.

█ The conduct must be willful to satisfy the mental state requirement. *See id.* The Eleventh Circuit has adopted a three-prong test to determine whether failure to pay taxes was willful. *See id.* Appellee IRS must establish that (1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty. *See id.* The Eleventh Circuit noted that a bankruptcy court may look to the traditional "badges of fraud" to determine whether conduct was willful. *See id.*

█ In *Spiwak*, this Court, the Honorable Judge Moore, set forth eight traditional badges of fraud factors that support a finding of willful evasion of the payment of taxes: "(1) the recurrence of the understatement of income for more than one tax year; (2) the understatement of income; (3) implausible or inconsistent explanations of behavior; (4) inadequate records; (5) transfer of assets to a family member; (6) transfer for inadequate consideration; (7) transfer that greatly reduced assets subject to IRS execution; and (8) transfers made in the face of serious financial difficulties." *In re Spiwak*, 285 B.R. 744, 751 (S.D.Fla.2002). The bankruptcy court's determination of a debtor's willful evasion of taxes is a question of fact that is reviewed under a clearly erroneous standard. *See Id.* at 748. As this Court sits in appellate capacity in this case, I must give considerable deference to a bankruptcy court's findings of fact, and I must not overturn its factual findings unless I determine that those findings are clearly erroneous. *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990).

A finding of fact is clearly erroneous when the record lacks substantial evidence to support it, such that an appellate court's review of the evidence results in a firm conviction that a mistake has been made. *See Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1548 (11th Cir.1993). The district court is not authorized to make independent factual findings as that is the function of the bankruptcy court. *See In re Sublett*, 895 F.2d 1381, 1384 (11th Cir.1990).

## V. Parties' Arguments

Appellant argues that the bankruptcy court erred by finding that Appellant willfully avoided payment of his taxes. Appellant argues that his tax liability for the years 1977—1979 were discharged in his 1996 bankruptcy. As an alternative argument, Appellant insists that, assuming this tax liability was not discharged, he *believed* that the liability had been discharged as a result of the 1996 bankruptcy. Appellant claims that he *believed* that the debt was discharged, therefore he maintains that he could not have willfully avoided paying taxes that he thought were not due.

Appellee IRS argues that the tax liability for the years 1977—1979 could not have

been discharged and Appellant could not have believed that the tax liability was discharged in his 1996 bankruptcy for several reasons. First, Appellee IRS maintains that because the taxes had not yet been assessed as of the date that Appellant filed bankruptcy in 1996, Appellant could not have truly believed that this tax liability was discharged. The tax liability for these years was not assessed until November 5, 1997.

Appellee IRS insists that "[a]s these liabilities had not yet been assessed on the date the Plaintiff filed his 1996 petition, there is no way that these taxes could have been discharged." Appellee IRS cites 11 U.S.C. § 523(a)(1)(A) to support this argument. Section § 523(a) provides: "[a] discharge under section 727 . . . of this title does *not* discharge an individual debtor from any debt—

(1) for a *tax* or customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, *whether or not a claim for such tax was filed or allowed".* (emphasis added).

Section § 507(a)(8) provides: "allowed unsecured claims of governmental units, only to the extent that such claims are for—(A) a tax on or measured by income or gross receipts—(iii) other than a tax of a kind specified in section . . . 523(a)(1)(C) of this title, *not assessed before, but assessable,* under applicable law or by agreement, after, the commencement of the case" (emphasis added). Because the taxes were not assessed before commencement of the 1996 case, Appellee IRS argues that it could not have been discharged.

Second, Appellee IRS argues that Appellant could not have believed that his tax liability for years 1977–1979 were discharged because Appellant *did not include any tax liability for these years in his*

*bankruptcy schedules.* Rather, Appellant listed that he owed tax liability for years 1987–1989 and 1991–1993 in his schedules. Appellant argued to the bankruptcy court that his failure to specifically include his tax liability for years 1977—1979 was a "typographical" error and that he erroneously listed a tax liability for years 1987—1989 instead of 1977–1979 in the schedules. The bankruptcy court rejected this argument because Appellee IRS offered testimony that Appellant had a tax liability for years 1987—1989 at the time that he filed his 1996 bankruptcy. Appellant did not yet have a tax liability for years 1977—1979 however.

Third, Appellee IRS noted that Appellant's own actions belie his argument that he honestly believed that his tax liability for 1977—1979 was discharged as a result of the 1996 bankruptcy. Appellant noted that in the bankruptcy schedules Appellant filed in conjunction with his 1998 bankruptcy, Appellant listed that he owed a tax liability for years 1977—1979. He listed the amount of this tax liability as $593,000.00. Moreover, Appellant also listed that he still owed a tax liability for these years on the bankruptcy schedules he filed in conjunction with his 2000 bankruptcy filing.

VI.   Analysis

I agree with the bankruptcy court's conclusion that Appellant's tax liability for the years 1977, 1978 and 1979 was nondischargeable. The bankruptcy court's conclusion was based on its determination that Appellant sought to evade or defeat the payment of taxes for these three years and he did so willfully. I conclude, under a *de novo* standard of review, that Appellant sought to evade or defeat the payment of taxes for the years 1977, 1978 and 1979. I also conclude that Judge Schermer's factual determination that Appellant willfully

avoided payment of his tax liability was not clearly erroneous.

### A. Appellant Sought to Defeat or Evade Paying Taxes

█ The facts in the record show that Appellant sought to defeat or evade paying taxes for the tax years 1977 through 1979. The record reflects that Appellant failed to file timely tax returns during a 21 year period. During that same period, Appellant only filed tax returns for six of those years after he was contacted by Appellee IRS, which demanded that he file tax returns. Further, in the three tax years at issue—1977, 1978 and 1979—Appellant grossly understated the amount of taxes he owed.

In 1977, Appellant claimed that he owed only $5,640.00 in taxes. After an audit, Appellee IRS determined that Appellant actually owed an additional $13,452.40 in taxes. In 1978, Appellant claimed that he owed only $1,434.00 in taxes. After an audit, Appellee IRS determined that Appellant actually owed an additional $54,347.00 in taxes. And in 1979, Appellant claimed that he owed *no taxes for this year*. After an audit, Appellee IRS determined that Appellant actually owed $17,002.34 in taxes for the year 1979. Appellant has not paid any of the additional assessed tax amounts. This failure to properly file tax returns and the failure to pay taxes satisfies a finding that a debtor attempted to evade or defeat payment of taxes. *See Fretz*, 244 F.3d at 1329.

Moreover, Appellant continuously transferred assets to family members and close acquaintances for no consideration. The Eleventh Circuit has held that intra-family transfers which lack consideration constitute an attempt to evade or defeat a tax for purposes of 11 U.S.C. § 523(a)(1)(C). *See Griffith*, 206 F.3d at 1396. As Appellant failed to timely file tax returns, failed to pay his taxes when they came due and made transfers of assets without consideration, I conclude that Appellant engaged in conduct in an attempt to evade or defeat the payment of taxes owed in violation of 11 U.S.C. § 523(a)(1)(C).

### B. Appellant's Conduct Was Willful

█ Applying the three prong test for willfulness established by the Eleventh Circuit in *Griffith*, I affirm the bankruptcy court's finding that Appellant willfully evaded paying taxes. *See* 206 F.3d at 1396. Appellant was an accountant. He had a duty to pay taxes and, as an accountant, he knew that he had such a duty. I also conclude that the bankruptcy court did not err when it concluded that Appellant had the ability to pay his tax obligations but intentionally failed to do so.

In the lengthy Findings of Fact and Conclusions of Law entered by the bankruptcy court, the bankruptcy court found that Appellant willfully avoided his duty to pay taxes. I agree with this finding and conclude that the bankruptcy court did not err in this regard. The facts of this case reveal, as I explained in section VI(A) above, that the first badge of fraud—the recurrence of the understatement of income for more than one tax year—exists in this case. I also find that the second badge of fraud exists. As I further explained in section VI(A) above, Appellant regularly understated his income.

I also find that the third badge of fraud exists in this case. Appellant's attempted explanation of his failure to pay taxes for the years 1977 through 1979 is implausible and inconsistent. As I detailed in Section V, Appellant claimed that he believed that his tax obligation for these years was discharged in bankruptcy. I reject this explanation. First, I reject Appellant's argument that the taxes were discharged in his 1996 bankruptcy discharge because at the

time of the discharge, Appellant did not yet have a tax liability for years 1977—1979. Since Appellee IRS had not yet assessed Appellant's tax liability for those years at the time of the discharge, the liability was not discharged.

Second, Appellant's argument that the taxes were discharged in his 1998 bankruptcy discharge is similarly without merit. When Appellant filed bankruptcy again in 2000, he listed the tax liability for years 1977 through 1979 as outstanding liabilities. If Appellant truly believed that the tax liability was discharged, he would not have included the taxes as liabilities in his 2000 bankruptcy.

Moreover, I find that the fifth badge of fraud is present in this case. Appellant routinely engaged in the transfer of assets to family members and his girlfriend, Patricia Montifinese. Instead of paying his taxes, Appellant lived a lavish lifestyle and continuously transferred his assets to family and his girlfriend without consideration in order to avoid paying his taxes. Appellant made these transfers for inadequate consideration, the sixth badge of fraud. As a result of these transfers, Appellant greatly reduced assets subject to execution by Appellee IRS, the seventh badge of fraud.

The presence of these factors supports a finding that Appellant willfully avoided payment of his taxes and support the bankruptcy court's conclusion that sufficient circumstantial evidence existed to show that Appellant had willful intent to evade payment of taxes. *See In re Spiwak*, 285 B.R. 744, 748 (S.D.Fla.2002). Consequently, I conclude that Appellant's unpaid tax liabilities for years 1977, 1978 and 1979 are non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. The bankruptcy court's Final Judgment and Findings of Fact and Conclusions of Law are AFFIRMED.

2. All pending motions not otherwise ruled upon are DENIED AS MOOT. This case is CLOSED.